**KENTUCKY BAR ASSOCIATION,**
**Movant**

v.

**Stephen B. CATRON, Respondent.**

**No. 2006–SC–000492–KB.**

Supreme Court of Kentucky.

Aug. 15, 2007.

As Corrected Aug. 27, 2007.

---

## OPINION AND ORDER

The Kentucky Bar Association (KBA) brought two charges against Respondent, Stephen B. Catron, KBA member number 11230, who's last known bar roster address was in Pigeon Forge, Tennessee, in two KBA files, 9926 and 11638. Respondent's disciplinary history includes a temporary suspension from the practice of law by Order of the Kentucky Supreme Court dated the 12th day of July, 2004. On the date of the temporary suspension, the Re-

spondent was then serving as Past President of the Kentucky Bar Association, preceded by 10 years of service as an officer and/or board member.

No answer was filed by Respondent to either of the charges brought and duly served upon Respondent. Numerous attempts were made to serve the charges on Respondent by mail. When service was finally accomplished, Respondent acknowledged in an e-mail receipt of the Charges and indicated his intent to answer. Subsequently, he e-mailed that he intended to request a motion for enlargement of time, which was not timely filed. The Board of Governors considered the motion and by unanimous vote of 12 yeas and 0 nays, denied the motion and denied filing of late answers. The Board thereafter treated the matter as a default case.

The history of the complaints and charges in the two files is set forth below:

### KBA File Number 9926

The Inquiry Commission charged Respondent with five counts of violations of the Kentucky Supreme Court Rules on September 23, 2005, as follows: SCR 3.130–1.2(a), acting outside the scope of representation; SCR 3.130–1.4(b), failure to communicate adequately with a client; SCR 3.130–1.5(a), charging an unreasonable fee; SCR 3.130–1.7(b), conflict of interest; and SCR 3.130–8.3(c), engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

### Factual Background

This action began as a "taxpayer" complaint raising issues regarding Respondent's representation of the Western Kentucky University Student Life Foundation (Foundation). Respondent prepared the papers establishing the Foundation and handled the arrangements for bond financing and property acquisition for the Foun-

dation. The Foundation was established to purchase dormitories from Western Kentucky University with the purpose of renovating them and making them available for student housing. While a majority of issues raised in the initial complaint were adequately addressed by Respondent's response to the bar complaint, questions remained regarding the purchase of a title insurance policy in the course of the property acquisition.

Pursuant to the loan agreement, the lender required a mortgagee title policy in the full amount of the mortgage, $20,015,285.00. For this lender's title insurance policy, the Foundation paid a title insurance premium to the Respondent's firm, from which the firm received a commission. This commission was not disclosed to the client and was in addition to the legal fees Respondent was already charging. Closing documents showed the title insurance premium as $224,667.75.

An additional owner's title policy was purchased, although the lender did not require the purchase of such a policy. In correspondence with bar counsel, Respondent claimed this policy was very important to the Foundation since its income and assets were so highly leveraged that it would be difficult to defend any title litigation, which could occur due to inability to locate deeds as to several tracts of land on which dormitories were located. Respondent admitted to bar counsel that no discussions were held with the client about the possible benefits of obtaining an owner's policy or the need for coverage. Respondent further admitted that the benefit to the Respondent's firm due to the commission to be obtained from such coverage was not disclosed, and asserted that to his knowledge this was never disclosed by law firms. Thus, without the client's approval or consent, an owner's policy in the amount of $100,000,000.00 was purchased

as part of the transaction, while the total amount financed through interim and bond financing was $65,445,000.00. The lender's policy already in place was primary.

Without disclosing to the client that he would be paid a commission from the premiums on these title insurance policies, the Respondent collected those premiums and his firm received what Western Kentucky University's attorney reported as a 70% commission in them, in addition to the legal fees Respondent was already being paid in connection with his representation of the Foundation in the transaction. The Foundation filed a Legal Fee Arbitration Petition with the KBA seeking the refund of at least $91,000.00 from Respondent's former firm. That amount represented the additional premium for owner's title insurance, which the Foundation asserted was neither requested by the Foundation nor required by the lender, together with an amount equal to the appropriate discount on the premium which the firm failed to obtain for the Foundation. This fee dispute was ultimately resolved.

### KBA File Number 11638

On October 28, 2005, the Inquiry Commission issued a five-count charge against Respondent alleging violations as follows: SCR 3.130–1.5(a), charging an unreasonable fee; SCR 3.130–1.7(b), conflict of interest; SCR 3.130–1.15(a) and (b), failing to hold client funds separately from the lawyer's own property, to account for those funds, to retain records regarding those funds and to return them upon demand; and SCR 3.130–8.1(b), failing to disclose facts necessary to the disciplinary authority.

*Factual Background*

Beginning in November 1988, Respondent served as Secretary, attorney, and service of process agent for the Tourism

and Economic Development Council, Inc. (TEDCO), and its successor, the Convention Center Corporation, a non-profit corporation established by the City of Bowling Green and Warren County to build and maintain the Convention Center. The City began an investigation following a letter written by one of its city commissioners in January 2003 expressing frustration with the Respondent's billing practices and expenditures relating to TEDCO. In July 2003, the Respondent and several other individuals were interviewed and, subsequently, the City hired Gregg Hovious to further investigate the Respondent's activities. Based on the report of Mr. Hovious, the City filed a civil lawsuit against the Respondent and his wife in Warren Circuit Court alleging that the Respondent received a total of $247,743.00 in funds from TEDCO to be paid to others, then failed to do so, or to return or account for those funds. Those sums remain unaccounted for.

On March 18, 1997, Respondent received a check from TEDCO payable to his former law firm in the amount of $197,743.00 which was to be deposited in the firm's escrow account and paid out to the provider of a sound system for the Convention Center. The City was ultimately billed directly and paid for the sound system itself, but the $197,743.00 was not returned to the City or to TEDCO. Respondent did not account for the funds. There was also no proof provided to TEDCO as to where the money was, or that the check was deposited into the firm's escrow account, although it was negotiated. Those funds also remain unaccounted for.

Respondent obtained a check from TEDCO on July 10, 1997, payable to his former law firm in the amount of $50,000.00 and bearing the notation "Golf Course Improvement." This check was deposited in the escrow account. However-

er, there is no evidence that TEDCO approved this expenditure, nor is there evidence that the money was used to pay any golf course expenses. Respondent has not provided an accounting for the $50,000.00 and never repaid the funds to either TEDCO or the City. Those funds remain unaccounted for.

According to the lawsuit, which was incorporated as part of the Charge, Respondent billed TEDCO for his time spent working in his capacity as a member of the Board and Secretary. He also billed TEDCO for services not authorized or requested by the client and at times billed an excessive amount. Ultimately, it was determined he overcharged the City in an amount estimated to total $298,444.99.

Respondent represented TEDCO and Hammons Hotels Bowling Green, L.P., John Q. Hammons Hotels, Inc. and/or John Q. Hammons Food and Beverage Holdings, Inc. (Hammons) simultaneously in the purchase and sale of property adjacent to property already owned by TEDCO. Respondent effectuated the purchase of the adjacent property by TEDCO from Mary D. and J.E. Cohron for the purpose of preventing an entity competing with Hammons from doing so, and thereby providing Hammons with the opportunity to obtain the property. TEDCO purchased that property on or about August 15, 1995 for $755,672.00, but it was not advised of the Respondent's interest on behalf of Hammons. Respondent was paid a fee by TEDCO for this representation, though the representation benefited his other client, Hammons, without TEDCO's knowledge.

The City's lawsuit against Respondent was ultimately settled, and the City's attorney advises that Respondent complied with the settlement terms. Respondent had requested the disciplinary matter be held in abeyance pending the outcome of

the civil suit filed against him based on the same subject matter as the Inquiry Commission Complaint. The matter was placed in abeyance on December 6, 2003. The Respondent was required to report to the Office of Bar Counsel within ten days of the conclusion of the litigation, whether by settlement or otherwise, but Respondent failed to file any such report. The Office of Bar Counsel learned from another source that the case had in fact been settled and filed a motion to remove the case from abeyance on February 9, 2005.

### Recommendation of Sanctions

The Board of Governors voted in favor of a motion to permanently disbar Respondent from the practice of law in this Commonwealth, which passed by a vote of 12 yeas to 0 nays. The KBA further recommended that the costs of this proceeding, as certified by the Disciplinary Clerk, be assessed against and paid by Respondent as required by SCR 3.500(5).

After consideration of the relevant facts and the recommendation of the KBA, this Court adopts the sanction of the Board of Governors pursuant to SCR 3.370(10) and orders that Respondent be permanently disbarred from the practice of law.

Therefore, it is ordered that:

1. Mr. Catron is permanently disbarred from the practice of law in the Commonwealth of Kentucky, effective immediately upon entry of this Order; and

2. He shall pay the costs of this proceeding in the total amount of $3,666.46, for which execution shall issue from this court upon finality of the Opinion and Order.

3. Respondent, Stephen B. Catron, in accordance with SCR 3.390, shall notify all Courts in which he has matters pending and all clients for whom he is actively involved in litigation and similar legal matters, of his inability to continue representation.

CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ.; and Special Justice PAUL K. CROLEY, II, and Special Justice MARVIN P. NUNLEY, sitting.

All concur.

LAMBERT, C.J.; and MINTON, J. not sitting.

ENTERED: August 15, 2007.

/s/ Will T. Scott
Deputy Chief Justice